IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 18, 2002

**STATE OF TENNESSEE v. GLENDA PONDER**

**Appeal from the Criminal Court for DeKalb County**
**No. 97-68F     Leon Burns, Jr., Judge**

_____

**No. M2002-00488-CCA-R3-CD - Filed December 19, 2002**

_____

Glenda Ponder appeals the DeKalb County Criminal Court's revocation of her probationary sentence and ordering into effect her incarcerative sentence in the Department of Correction. Upon review, we are unpersuaded that the lower court abused its discretion and therefore affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

David N. Brady and John B. Nisbett, III, Cookeville, Tennessee, for the Appellant, Glenda Ponder.

Paul G. Summers, Attorney General & Reporter; Angele M. Gregory, Assistant Attorney General; William Edward Gibson, District Attorney General; and William Locke, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

Convicted in August 1997 of two drug charges, the defendant was placed on an effective four-year probationary sentence. In 1999, the defendant was found to have violated her probation by failing to report. She was ordered to serve 45 days in jail and thereafter continue on probation with an additional condition that she participate in the Community Corrections program. After she served approximately fourteen months under Community Corrections supervision, she was transferred in October 2000 to the supervision of the probation department. In June 2001, the lower court issued a probation violation warrant in which it was alleged that the defendant had violated the terms of her sentence by violating the law and failing to pay her probation fees.

At the revocation hearing, the defendant admitted that she had been charged in Lincoln County with 22 counts of writing worthless checks and that she had been convicted of seven of these offenses, with the remaining fifteen having been dismissed with the agreement that she would pay restitution. The defendant testified, however, that she had made restitution on all 22

checks and had paid all court costs and supervision fees assessed to her. The defendant also admitted that she had not paid any probation supervision fees on her DeKalb County drug cases; she claimed that she had been financially unable to do so due to her difficulty in obtaining steady employment and the costs associated with the rearing of her two teenage children.

The defendant provided additional background information about her situation. She testified that she had received a "large" worker's compensation settlement for a back injury. The defendant was working at night, and she provided her seventeen-year-old daughter with a few signed checks for the daughter's use while the defendant was at work. The defendant claimed she had not kept close enough track of her own spending and that of her daughter and through inadvertence, the bank account became overdrawn. The defendant maintained that she never meant to be dishonest with anyone, and because the checks bore her signature, she owned up to the mistake, pleaded guilty, and paid all of the required restitution and costs.

The defendant testified that following her back injury, she was unable to work for several months. Due to the injury, she has limits on the type of work she is able to do. At the time of the hearing, she was laid off from a production job at Dixie Metal Craft. She related that following the World Trade Center attacks, the plant had laid off over 40 percent of its personnel, and the remaining personnel were working reduced hours. Prior to the lay off, the defendant had been working 55 hours a week. The hearing was held in December 2001, and the defendant hoped that she would be recalled to work after the first of the year. With respect to the unpaid probation fees, the defendant testified that she had been financially strapped given her work situation, the requirement that she make restitution on the worthless checks, and the costs associated with her two children. She claimed, "I'm doing the very best that I can do."

When asked about her prior revocation in these cases, the defendant testified that she had been using drugs but realized it would be in her best interest to seek help. She checked herself into an in-patient rehabilitation program in Nashville, and she asked her counselor at the program to notify her probation officer where she was. After a seven-day inpatient stay, the defendant had the option of returning to her home in Smithville or going to a halfway house in Lewisburg. Because the defendant knew that she would fall back into the drug culture if she returned to her old friends in Smithville, she chose the latter option. She testified that the warrant for not reporting was issued as a result of her time in the halfway house in Lewisburg. She claimed that having the opportunity to get herself off of drugs had been worth the subsequent 45 days she had to serve in jail for the probation violation.

The defendant implored the court to give her another opportunity on probation. She claimed that she had worked very hard to remain drug free and to build a solid reputation in the community in Lincoln County where she had relocated. She wanted the opportunity to stay out of jail so that she could parent her children. Through counsel, the defendant proposed that the trial court extend her probation, rather than requiring her to serve the entire sentence.

The lower court acknowledged that the defendant had "a lot of positive things to be said . . . in [her] behalf." However, the court found that the defendant had been afforded prior opportunities of which she had not availed herself. The court found that it could not overlook the convictions and the nonpayment of fees, and it found that the defendant had the means to pay at least some of the fees but had selectively chosen not to do so.

The defendant filed this appeal, in which she does not argue with the court's decision to revoke probation but does question the order that she serve her original four-year sentence, rather than an order that she serve an additional two years on probation. The defendant raises the harshness of this remedy given that she had served all but approximately 60 days of her four-year sentence when the revocation warrant was issued.

The standard of review upon appeal of an order revoking probation is the abuse of discretion standard. *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). In order for an abuse of discretion to occur, the reviewing court must find that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the terms of probation has occurred. *Id.* at 82; *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). The trial court is required only to find that the violation of probation occurred by a preponderance of the evidence. Tenn. Code Ann. §§ 40-35-311(e) (Supp. 2000). Upon finding a violation, the trial court is vested with the statutory authority to "revoke probation and suspension of sentence and cause the defendant to commence the execution of the judgment as originally entered." *Id.* Furthermore, when probation is revoked, "the original judgment so rendered by the trial judge shall be in full force and effect from the date of the revocation of such suspension." Tenn. Code Ann. §§ 40-35-310 (1997). The trial judge retains the discretionary authority to order the defendant to serve the original sentence. *See State v. Duke*, 902 S.W.2d 424, 427 (Tenn. Crim. App. 1995).

The defendant admitted at the hearing that she was guilty of the alleged violations, and on appeal she does not contest the lower court's findings in that regard. We therefore need not concern ourselves with the propriety of the revocation itself. *See* State v. Johnson, 15 S.W.3d 515, 518 (Tenn. Crim. App. 1999) (defendant's concession of act constituting violation of probation constitutes substantial evidence of violation, and trial court's revocation based thereon is not abuse of discretion). The only question we must answer is whether the court abused its discretion in ordering the defendant to serve the remainder of her sentence in the Department of Correction.

While the defendant in many respects presents a compelling case for leniency, the fact remains that the defendant committed multiple violations of her probationary terms after having been given a second chance earlier during the term of the same sentence. Moreover, the lower court found that the defendant's nonpayment of her supervision fees was willful in that she had selectively chosen not to pay the DeKalb County fees, yet she had chosen to pay the Lincoln County fees. The record likewise reflects that the defendant received what she characterized as a "large settlement" for a worker's compensation claim and had been employed 55 hours per week during a portion of her probationary sentence. Yet even during these more lucrative times, the defendant did not make any attempt to pay her DeKalb County supervision fees.

Our avenue for revisiting the lower court's decision is extremely narrow given the abuse of discretion standard to which we must adhere. On balance, we cannot conclude that the lower court abused its discretion in ordering the defendant to serve her original sentence. Accordingly, the judgment of the lower court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE